I cannot yield my assent to the position that a new felony is created by the Act of 1791, or that any offense is created which did not antecedently exist. For the killing of a slave, if accompanied with those circumstances which constitute murder, amounts to that crime, in my judgment, as much as the killing of a free man.
What is the definition of murder? The unlawful killing of a reasonable creature within the peace of the State, with malice aforethought. A slave is a reasonable creature; may be within the peace, and is under the protection of the State, and may become the victim of preconceived malice. Upon what foundation can the claim of a master to an absolute dominion over the life of his slave be rested? The authority for it is not to be found in the law of nature, for that will authorize a man to take away the life of another, only from the unavoidable necessity of saving his own; and of this code the cardinal duty is to abstain from injury and do all the good we can. It is not the necessary consequence of the state of slavery, for that may exist without it, and its natural inconveniences ought not to be aggravated by an evil, at which reason, religion, humanity, and policy equally revolt. Policy may occasionally dictate the propriety of enhancing or mitigating the punishment; (200) may at one time subject the offender to a year's imprisonment, and at another to death; yet amidst all these mutations the crime is unchanged in its essence, undiminished in its enormity. The scale of its guilt exists in those relations of things which are prior to human institutions, and whose sanctions must forever remain unimpaired.* *Page 176 
* According to Judge Blackstone, the principal efficacy of human laws consist in restraining the conduct of men, as to indifferent points; but, he adds, "with regard to such points as are not indifferent, human laws are only declaratory of and act in subordination to the divine and natural law. To instance in the case of murder: this is expressly forbidden by the divine and demonstrably by the natural law; and from these prohibitions arise the true unlawfulness of this crime. Those human laws that annex a punishment to it do not at all increase its moral guilt, or superadd any fresh obligations in foro conscientiae to abstain from its perpetration." — 1 Com., 43.
It cannot be distinctly inferred from the Act of 1774 that the Legislature of that period doubted whether this amounted to murder at common law; they do indeed state, in the preamble of that act, that some doubts have arisen with respect to the punishment proper to be inflicted upon those guilty of the offense; but such doubts resulting from considerations of a political nature may very well consist with an entire conviction that the crime is murder at common law. Doubtless they may ordain whatever punishment they think fit for every crime; they may at one time deem imprisonment sufficiently severe to repress the crime of killing a slave, when perhaps a different state of things may at another period suggest the necessity of an increased severity. But their adopting the lighter punishment does not imply that, before the time of adoption, the act was without guilt. To pursue the argument in its consequences, it will follow that from the first settlement of this State, until the year 1773, no act of the Legislature having passed upon this subject, the crime of killing a slave with malice was not punishable as homicide. The contrary conclusion appears to me most just, namely, that the crime was comprehended under the common law definition of murder, which the statutes of 23 Hen., 8, and 1 Ed., 6, deprived of clergy; that it (201) never ceased to be so considered; but in 1774 the Legislature thought proper to mitigate the punishment of the first offense from death to imprisonment, reserving the common law punishment of death to the second conviction. So it remained until 1791, when the Legislature aimed to restore the former punishment by the act upon which this prisoner is indicted. The principle relied on is quite correct, that whenever an offense is made felony by statute, it shall have the benefit of clergy, unless it be expressly excluded from it; and in all felonies clergy is allowable, unless taken away by statute; but the Act of 1791, repealing that of 1774, necessarily revived the operation of those statutes by which murder is deprived of clergy, and if this act had been a simple repeal, or sufficiently explicit in other respects, judgment of death must have been pronounced against the prisoner. But when the Court is called upon, under an act of Assembly, to pronounce the highest punishment known to the law, they must be satisfied that the language used is clear and explicit to the object intended. For if it admits of two constructions, that must be adopted which is favorable to the prisoner. On this ground, therefore, and the reasons given by the rest of the Court, I think no judgment can be pronounced.